UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

_____

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

DONALD FILLERS, DAVID WOOD,
JAMES MATHIS, MATHIS COMPANIES, INC.,
and WATKINS STREET PROJECT, LLC,

                Defendants.

_____

1:09-CR-144

JUDGES Collier/Carter_____

18 U.S.C. § 371 – Conspiracy to Violate the
    Clean Air Act & to Defraud the
    United States
42 U.S.C. § 7413(c) – Clean Air Act
    Violations
18 U.S.C. § 1001 – False Statements
18 U.S.C. § 1519 – Obstruction of Justice
18 U.S.C. § 2(a) – Aiding & Abetting

## INDICTMENT

THE GRAND JURY CHARGES that, at all times material to this Indictment:

## PARTIES

        a.      Defendant WATKINS STREET PROJECT, LLC (hereinafter "WSP") was a limited liability company organized under the laws of Tennessee (I.D. Number 0448069) engaged in the business of, among other things, the acquisition, demolition, and salvage of commercial buildings, including the Standard Coosa Thatcher textile plant located on the 1700 Block of Watkins Street, Chattanooga, Hamilton County, Tennessee.

        b.      Defendant DONALD FILLERS was a part-owner, and general partner of WSP.

        c.      Defendant DAVID WOOD was a manager/supervisor of, among other things, salvage and demolition activities for WSP.

-1-

d.     Defendant MATHIS COMPANIES, INC., (hereinafter "MCI") was a corporation organized under the laws of Tennessee (I.D. Number 0441829), engaged in, among other things, commercial construction, demolition, and salvage activities in the vicinity of Chattanooga, Tennessee, to include the demolition and salvage of the former Standard Coosa Thatcher Textile Plant (hereinafter "Standard Coosa"), located on the 1700 Block of Watkins Street, Chattanooga, Hamilton County, Tennessee.

e.     Defendant JAMES MATHIS was the owner of MCI.

## STATUTORY & REGULATORY BACKGROUND

f.     Congress enacted 42 U.S.C. §§ 7401 et. seq. (hereinafter "the Clean Air Act" or "CAA"), with the stated purpose of "to protect and enhance the quality fo the Nation's air resources so as to promote the public health and welfare . . . ."  To that end, Congress and the United States Environmental Protection Agency (hereinafter "EPA") have determined that asbestos is a "hazardous" air pollutant. Congress has found that medical science has established no minimum level of exposure to asbestos fibers which is considered safe to exposed persons. 20 U.S.C. § 3601(a)(3).

g.     EPA, United States Department of Labor, Occupational Safety and Health Administration (hereinafter "OSHA"), and the State of Tennessee administer laws and regulations governing how asbestos must be abated, the equipment that must be provided to workers conducting abatement, and sampling methodology and analysis to verify the effectiveness of the abatement.

h.     The standards promulgated by EPA are commonly known as the National

-2-

Emission Standards for Hazardous Air Pollutants or "NESHAPs". Pursuant to these NESHAPs, EPA established work practice standards that must be followed to ensure the safe and proper handling, removal, and disposal of asbestos during renovation or demolition work. 40 C.F.R. §§ 61.145, 61.150, 61.154.

  i.  "Friable asbestos material," as used in this Indictment, means any material containing more than one percent (l%) asbestos, as determined by approved EPA methodologies, that, when dry, can be crumbled, pulverized or reduced to powder by hand pressure.

  j.  "Regulated asbestos-containing material" (hereinafter "RACM" or "asbestos"), means friable asbestos material or asbestos containing material that can become friable as a result of demolition activities. 40 C.F.R. § 61.141.

  k.  Demolition and renovation activities are regulated under the Clean Air Act when they involve at least 260 linear feet on pipes, 160 square feet on other facility components, or 35 cubic feet off facility components (where the length or area could not be measured previously) of RACM, which includes friable asbestos material. 40 C.F.R. § 61.145(a).

  l.  "Owner or Operator of a demolition or renovation activity" means any person who owns, leases, operates, controls or supervises the facility being demolished or renovated or any person who owns, leases, operates, controls or supervises the demolition or renovation operation, or both. 40 C.F.R. § 61.141.

  m.  The Clean Air Act's asbestos work practice standards describe the appropriate procedures for the notification and safe handling, stripping, removal and disposal of RACM during renovation or demolition to prevent emissions of particulate asbestos material into the air.

These work practice standards require, in pertinent part, that:

i.    to determine the requirements for proper building renovation or demolition, prior to commencement, the owner or operator must cause the affected facility to be "thoroughly inspected," or "surveyed," for the presence of asbestos (40 C.F.R. § 61.145(a));

ii.    the owner or operator must remove all RACM from a facility being demolished or renovated before any activity begins that would break up, dislodge, or similarly disturb the material or preclude access to the material (40 C.F.R. § 61.145(c)(1));

iii.    the owner or operator must provide the EPA Administrator with written notice of the intention to renovate or demolish a facility containing regulated asbestos material ten days before the activity begins (40 C.F.R. § 61.145(b));

iv.    the owner or operator must have present during the renovation or demolition project a foreman, management-level person or other authorized representative, trained in compliance with the asbestos regulations (40 C.F.R. § 61.145(b)(xiii) and (c)(8));

v.    friable asbestos materials must be adequately wetted when being stripped from facility components (40 C.F.R. § 61.145(c));

vi.    friable asbestos materials and facility components covered with such materials must be carefully lowered to the floor and to ground level, not

-4-

dropping, throwing, sliding, or otherwise damaging or disturbing the

RACM (40 C.F.R. § 61.145(c));

vii.    RACM that has been removed or stripped must remain adequately wetted until it is packed and sealed in leak-tight containers or wrappings (40 C.F.R. § 61.145(c));

viii.    friable asbestos waste containers transported off the facility site must be marked with labels that state the name of the asbestos waste generator and the location at which the waste was generated (40 C.F.R. § 61.145(c));

ix.    the owner or operator must maintain waste shipment records that contain the information set forth in 40 C.F.R. §§ 61.150(d)(1) through (5)(40 C.F.R. § 61.145(c)); and

x.    the waste generator must deposit friable asbestos-containing materials and other components containing or covered with asbestos-containing materials as soon as practical at a disposal site authorized to accept asbestos (40 C.F.R. § 61.150(b)(1));

n.    OSHA-promulgated regulations prescribe the protective gear that must be provided to asbestos-abatement workers, the licensing requirements for such workers and supervisors, and the air monitoring and sampling requirements that must be conducted before, during and after such abatement. These requirements provide that:

i.    individuals supervising the removal of RACM must be properly accredited to do so;

-5-

ii.     individuals conducting the removal of RACM must wear protective gear during abatement activities to include properly fitted respirators and protective suits as set forth in 29 C.F.R. § 1926.1101; and

iii.    each employer conducting specified types of asbestos abatement work must have air monitoring analysis performed during the work to accurately determine the airborne concentration of asbestos to which employees may be exposed. Such air analysis is referred to herein as "OSHA Personals." To conduct air analysis on OSHA Personals, analysts must be trained in, and utilize, required methodologies set by the National Institute of Safety and Health (hereinafter "NIOSH"). Each air monitor must be given a respirator and fit tested for its use, pursuant to OSHA regulations. <u>See</u> 29 C.F.R. part 1926.1101.

iv.    Training for asbestos abatement workers and supervisors is required under the Asbestos Hazard Emergency Response Act of 1986 (hereinafter "AHERA"). AHERA requires certain individuals dealing with friable asbestos-containing material in commercial buildings to be specially accredited. 15 U.S.C. § 2646(a)(1).

o.    Each state is permitted to develop a program for the implementation and enforcement of Clean Air Act emission standards (discharges into the air) and other requirements of 42 U.S.C. § 7412 and submit the program to EPA for approval. A program submitted by a state may provide for partial or complete delegation of EPA's authority to implement and enforce Clean Air Act emission standards and prevention requirements, but shall

-6-

not include authority to set standards less stringent than those promulgated by EPA. 42 U.S.C. § 7412(1). The Tennessee Department of Environment and Conservation, Division of Air Pollution Control, is responsible for enforcing these regulations for the State of Tennessee with the exception of Davidson and Knox counties. See 40 C.F.R. § 61.04; 46 Fed. Reg. 29330-02, 1981 WL 109430 (June 1, 1981); Tenn. Comp. R. & Regs. 1200-03-11-.0. As part of the EPA-approved delegation to Tennessee, municipalities and counties are likewise permitted to apply to the State of Tennessee for "Certificates of Exemption" to administer the delegated NESHAP program. See T.C.A. § 68-201-115. Having applied for, and obtained such certificates, demolition and asbestos renovation activities conducted in Hamilton County (i.e., where the Standard Coosa facility is located) are under the jurisdiction of the Chattanooga-Hamilton County Air Pollution Control Bureau (hereinafter "Air Pollution Control"). Accordingly, in addition to the work-practice standards described above, the following requirements apply in Chattanooga, Tennessee:

  i. An owner or operator wishing to demolish a building must submit an application for a demolition permit to the City of Chattanooga.

  ii. Prior to the commencement of any demolition activities, the owner or operator must cause the affected facility to be "thoroughly inspected" or "surveyed" for the presence of asbestos in accordance with the work-practice standards described in the preceding paragraphs.

  iii. The owner or operator must then submit a 10-day notice to Air Pollution Control listing, among other things, the amount of RACM present in the

building, the aforementioned survey, the owner of the facility, the operator who will be in charge of demolition, and the licensed asbestos-abatement company that will remove any asbestos prior to the commencement of demolition activities.

## COUNT 1

### Conspiracy to Defraud the United States & Conspiracy to Violate NESHAPs

1.    Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.    Beginning in or about August 2004 through in or about December 2005, the exact dates being unknown to the Grand Jury, within the Eastern District of Tennessee and elsewhere, Defendants DONALD FILLERS, DAVID WOOD, JAMES MATHIS, WSP, and MCI did combine, confederate, conspire and agree together, and with others both known and unknown to the Grand Jury, (i) to defraud the United States by impeding and impairing the governmental functions of EPA and Air Pollution Control in enforcing the federal environmental regulations and the Department of Labor and its agency, OSHA, in enforcing the federal safety and health regulations covering certain workers throughout the United States and (ii) to knowingly commit offenses against the United States, that is to: violate the Clean Air Act, 42 U.S.C. §§ 7412(b) and (h) and 7413(c)(1), 40 C.F.R. §§ 61.145, 61.150 and 61.154.

### Manner & Means

3.    DONALD FILLERS and others, known and unknown to the Grand Jury, founded WSP on June 6, 2003, in part, for the purpose of purchasing and demolishing Standard Coosa to

-8-

salvage brick, lumber, piping, metals, and other marketable materials for resale and profit.

4.      WSP purchased Standard Coosa, which occupied the 1700 Block of Watkins Street, bordered by E. 18th Street and E. 17th Street in Chattanooga, Tennessee, on or about July 30, 2003.  WSP purchased each and every commercial building located on this block, with the exception of a day-care center and nursery, which was located on the same block as Standard Coosa in Chattanooga, Tennessee.

5.      On or about July 8, 2003, the exact dates unknown to the Grand Jury, Defendants WSP and DONALD FILLERS hired Alternative Actions, Inc., a certified asbestos surveying company, to survey Standard Coosa for the presence of asbestos.  Alternative Actions, Inc. produced a written survey which identified 6,126 linear feet of pipe insulation, 348 EA of pipe fittings, 4,293 square feet of equipment insulation, 3,570 square feet of transite, 1,600 square feet of floor tile / mastic, and 2,440 square feet of oven insulation, all of which contained RACM.

6.      On or about July 16, 2003, June 22, 2004, August 19, 2004, and September 7, 2004, the Defendants obtained estimates from Alternative Actions, Inc.; SCI Remediation, Inc.(hereinafter "SCI"); and Battlefield Abatement, Inc. (hereinafter "Battlefield"), for the lawful abatement and removal of all of the asbestos identified in the above-described 2003 Alternative Actions, Inc. survey.  Alternative Actions, Inc.'s, SCI's, and Battlefield's estimates for the asbestos abatement at Standard Coosa were $214,650, $129,250 and $126,542 respectively. Each and every one of those bids were rejected by Defendants WSP and DONALD FILLERS.

7.      In furtherance of the conspiracy, the Defendants had incomplete and partial surveys of Standard Coosa conducted to mislead regulatory authorities and others as to the

amount of RACM located at Standard Coosa, which was to be demolished.

8.     In furtherance of the conspiracy, Defendants WSP, DONALD FILLERS and JAMES MATHIS provided false and misleading 10-day notifications to Air Pollution Control of their intention to demolish Standard Coosa.

9.     In furtherance of the conspiracy, the Defendants failed to have a properly-licensed person or other authorized representative trained in compliance with the asbestos regulations present at Standard Coosa during certain asbestos-abatement and demolition activities.

10.    In furtherance of the conspiracy, the Defendants and people acting at the Defendants' direction performed asbestos abatement in violation of Federal, State and county laws and regulations, to wit: asbestos was removed without wetting with knives, chisels, saws, fork lifts and by hand; thrown out of windows; swept up using brooms and loaders; pushed into open piles; stored on-site in open dumpsters; sorted by hand; hidden in dumpsters; transported off-site without providing for proper labeling or shipping; and disposed of off-site at facilities not authorized to accept asbestos.

11.    In furtherance of the conspiracy, Defendants WSP, DONALD FILLERS, and DAVID WOOD hired untrained and unlicensed day-laborers, homeless people, and other individuals to carry out the illegal activities listed in the preceding paragraph.  These individuals had neither the requisite asbestos abatement training, proper licenses, nor protective equipment before they engaged in these activities.

12.    In furtherance of the conspiracy, the Defendants and their employees, day-laborers, and other individuals acting at their direction, failed to remove all RACM from

Standard Coosa prior to commencing demolition and renovation activities.

13.     In furtherance of the conspiracy, the Defendants concealed and covered up their illegal activities by making false statements to inspectors, regulators and law enforcement personnel and preparing false and fraudulent documents.

**Overt Acts**

14.     In or about August 2004, the exact dates being unknown to the Grand Jury, Defendants solicited an additional bid from ADC Systems, Inc. (hereinafter "ADC"), a certified asbestos-abatement company for the removal of RACM from the Standard Coosa facility. However, the Defendants failed to provide ADC with the 2003 Alternative Actions, Inc. survey and, instead, showed ADC personnel only a limited portion of the Standard Coosa facility. The ADC survey of this limited portion of Standard Coosa identified substantially less RACM than actually existed on the Standard Coosa site to be demolished. The corresponding ADC estimate was less than $28,900.

15.     On or about August 1, 2004, the exact dates unknown to the Grand Jury, Defendants WSP and DONALD FILLERS hired Defendant DAVID WOOD to oversee all salvage operations at Standard Coosa.

16.      On or about August or September of 2004, the exact date being unknown to the Grand Jury, Defendants WSP and DONALD FILLERS entered into a contract with  Defendants JAMES MATHIS and MCI, to demolish Standard Coosa.

17.     On or about August 30, 2004, Defendant JAMES MATHIS filed a materially false and misleading 10-day notice to Air Pollution Control that (a) listed the limited RACM

figures provided by ADC (i.e., 1,800 linear feet, 800 pipe insulation, and 200 square feet of linoleum) and (b) misrepresented that these limited ADC figures reflected the total RACM present at the entire Standard Coosa site.

18.     Shortly after August 30, 2004, the exact date unknown to the Grand Jury, DONALD FILLERS called Air Pollution Control and modified the RACM figures provided in the 10-day notice – again using falsified numbers (e.g., 2,000 linear feet of pipe wrap).

19.     On September 17, 2004, Defendants JAMES MATHIS and DONALD FILLERS provided an application for demolition to the City of Chattanooga indicating that the vast majority of Standard Coosa was to be demolished knowing that the 10-day notice did not account for all RACM present.

20.     Between August and October of 2004, the exact dates being unknown to the Grand Jury, Defendants DONALD FILLERS and JAMES MATHIS instructed ADC to conduct its limited abatement on the northwest quadrant of the Standard Coosa complex.

21.     On or about September 27, 2004, the exact date being unknown to the Grand Jury, Defendant JAMES MATHIS directed employees of MCI to commence with demolition activities despite knowing that substantial amounts of RACM remained in the Standard Coosa buildings. MCI employees subsequently conducted demolition activities from at least September 2004 through at least January of 2005, the exact dates being unknown to the Grand Jury.

22.     In or around September 2004, the exact date being unknown to the Grand Jury, Defendant DAVID WOOD hired a crew of day-laborers, and other vulnerable individuals to assist him and Defendant DONALD FILLERS with salvage operations throughout the entire

-12-

Standard Coosa complex (hereinafter the "Salvage Crew"). At all times relevant to this Indictment, none of the members of this Salvage Crew were properly accredited, trained, or otherwise qualified to conduct such asbestos-abatement activities.

23.     Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, Defendants DAVID WOOD and DONALD FILLERS and others acting at their direction, removed RACM in violation of work-practice standards – i.e., they used saws, power tools, fork-lifts, pry-bars and other tools to remove dry RACM; let RACM fall directly to the floor; threw bulk quantities of RACM out of windows, letting it fall to the ground below; stored RACM on-site for prolonged periods by piling it into co-mingled debris piles with brooms, shovels, and front-end loaders; and disposed of RACM without properly wetting, containerizing, or labeling.

24.     Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, Defendants DAVID WOOD, DONALD FILLERS, and others acting at their direction, caused RACM to lie in open debris piles on site without disposing of such RACM at approved sites as soon as practicable.

25.     Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, Defendants DONALD FILLERS and DAVID WOOD ordered members of the Salvage Crew to transfer RACM to and between various unsealed dumpsters on site in an effort to hide such materials from regulatory authorities.

26.     In or around September 2004, the exact dates being unknown to the Grand Jury, Defendant JAMES MATHIS was informed by ADC personnel that RACM was present

-13-

throughout the Standard Coosa buildings being demolished and that Defendant JAMES MATHIS should cease all demolition activities. Defendants JAMES MATHIS and MCI continued demolition activities despite being advised of the presence of RACM, thereby exposing others to asbestos contamination.

27.    On or about September 27, 2004, Defendant DONALD FILLERS informed ADC personnel that the scattered RACM mentioned in the previous paragraph would be cleaned up by members of the Salvage Crew.

28.    Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, Defendants DONALD FILLERS, DAVID WOOD and others, known and unknown to the Grand Jury, arranged for the illegal transportation of open containers of RACM to disposal facilities unpermitted and ill-equipped to handle this hazardous material.

29.    In or after March 2005, the exact dates being unknown to the Grand Jury, Defendants JAMES MATHIS and MCI quit working at Standard Coosa. Defendant DONALD FILLERS authorized Defendant DAVID WOOD to complete salvage and demolition activities at Standard Coosa. Defendant DAVID WOOD subsequently began demolishing the remaining Standard Coosa buildings, despite knowing that all RACM had not yet been removed from the facility.

30.    Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, DONALD FILLERS and DAVID WOOD directed the Salvage Crew to conduct the abatement, salvage and demolition activities mentioned in the

-14-

preceding paragraphs without providing them with respirators or any other protective gear, OSHA personals, or any licensing training.

31.     Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, Defendants DONALD FILLERS and DAVID WOOD ordered abatement and demolition activities to proceed without the presence of a person trained in compliance with the asbestos abatement regulations.

32.     After Air Pollution Control discovered the presence of RACM on the ground and in debris piles at the Standard Coosa site in September of 2005, WSP owners attempted to have members of the Salvage Crew to pick up the scattered RACM by hand.

33.      After Air Pollution Control discovered the presence of RACM on the ground and in debris piles at the Standard Coosa site in September of 2005, Air Pollution Control directed that WSP  provide the 2003 Alternative Actions, Inc. survey to establish how much RACM was originally present in Standard Coosa.  In response, Defendant DONALD FILLERS provided an incomplete version of the 2003 Alternative Actions, Inc. survey missing pages identifying significant amounts of RACM.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

### NESHAPs: Failure to Provide Accurate 10-Day Notice
(As Against Donald Fillers, James Mathis, MCI, and WSP)

34.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

35.     On or about August 30, 2004, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, Defendants DONALD FILLERS, JAMES MATHIS, MCI, and WSP, who were owners and operators of a demolition activity (i.e., Standard Coosa), knowingly failed to provide an accurate written notification to EPA and Air Pollution Control prior to demolishing a facility containing a jurisdictional amount of RACM (i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM) from Standard Coosa thereby violating asbestos work practice standards.

All in violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2(a).

## COUNT 3
### NESHAPs: Commencing Demolition Prior to Abatement
(As Against All Defendants)

36.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

37.     Between in or around September 2004 and in around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, Defendants DONALD FILLERS, DAVID WOOD, JAMES MATHIS, MATHIS COMPANIES, INC., and WSP, who were owners and operators of a demolition activity to wit, Standard Coosa (a facility containing a jurisdictional amount of RACM – i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM), knowingly commenced demolition activities before all RACM was removed from Standard Coosa thereby violating asbestos work practice standards.

All in violation of Title 42, United States Code, Section 7413(c)(1) and Title 18, United States Code, Section 2(a).

-16-

## COUNT 4
## NESHAPs: Failure to Have a Trained Individual Present
(As Against All Defendants)

38.      Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

39.      Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, Defendants DONALD FILLERS, DAVID WOOD, JAMES MATHIS, MATHIS COMPANIES, INC., and WSP, who were owners and operators of a demolition activity, to wit, Standard Coosa (a facility containing a jurisdictional amount of RACM – i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM), knowingly failed to have present during the demolition project, an individual trained in the provisions of NESHAPs and the attendant regulations and the means of complying with them, thereby violating asbestos work practice standards.

All in violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2(a).

## COUNT 5
## NESHAPs: Failure to Wet RACM
(As Against WSP, Donald Fillers, and David Wood)

40.      Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

41.      Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, Defendants

-17-

WSP, DONALD FILLERS, and DAVID WOOD, who were owners and operators of a demolition activity, to wit, Standard Coosa (a facility containing a jurisdictional amount of RACM – i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM), knowingly (a) failed to adequately wet friable asbestos while it was being removed from facility components at Standard Coosa and (b) failed to keep the RACM removed from Standard Coosa facility components adequately wetted until packed and sealed in leak tight containers or wrappings, thereby violating asbestos work practice standards.

All in violation of Title 42, United States Code, Section 7413(c)(1) and Title 18, United States Code, Section 2(a).

## COUNT 6
### NESHAPs: Failure to Lower RACM Properly
(As Against WSP, Donald Fillers, and David Wood)

42.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

43.     Between in or around at least September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, Defendants WSP, DONALD FILLERS, and DAVID WOOD, who were owners and operators of a demolition activity, to wit Standard Coosa (a facility containing a jurisdictional amount of RACM – i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM), failed to carefully lower to the floor and to ground level (not dropping, throwing, sliding, or otherwise damaging or disturbing) the RACM they removed from facility components at Standard Coosa, thereby violating asbestos work practice standards.

-18-

All in violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2(a).

## COUNT 7
### NESHAPs: Failure to Containerize & Timely Dispose of RACM
(As Against WSP, Donald Fillers, and David Wood)

44.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

45.     Between in or around September 2004 and in or around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee, WSP, DONALD FILLERS, and DAVID WOOD, who were owners and operators of a demolition activity, to wit, Standard Coosa (a facility containing a jurisdictional amount of RACM – i.e., at least 260 linear feet, 160 square feet, or 35 cubic feet of RACM), knowingly (a) disposed of asbestos in non-leak-tight containers and (b) failed to deposit RACM and other components containing or covered with RACM as soon as practical at a disposal site authorized to accept asbestos, thereby violating asbestos work practice standards.

All in violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2(a).

## COUNT 8
### False Statements
(as Against James Mathis)

46.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

47.     On or about August 30, 2004, in the Eastern District of Tennessee, in a matter

within the jurisdiction of an agency of the Executive Branch of the United States Government, Defendant JAMES MATHIS did knowingly and willfully submit a false writing or document to Air Pollution Control knowing the same document contained materially false, fictitious, and fraudulent entries.  To wit, Defendant JAMES MATHIS filed a 10-day notice with Air Pollution Control listing 1,800 linear feet, 800 feet of pipe insulation, and 200 square feet of linoleum (all of which contained RACM), when in truth and fact, as JAMES MATHIS then and there well knew, there was RACM in the amounts of 6126 linear feet of pipe insulation, 348 EA of pipe fittings, 4,293 square feet of equipment insulation, 3,570 square feet of transite, 1,600 square feet of floor tile / mastic, and 2,440 square feet of oven insulation present at the Standard Coosa facility.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 9
**False Statements**
(as Against Donald Fillers)

48.     Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

49.     In or about September of 2004, the exact dates unknown to the Grand Jury, in the Eastern District of Tennessee, in a matter within the jurisdiction of an agency of the Executive Branch of the United States Government, Defendant DONALD FILLERS did knowingly and willfully make a materially false, fictitious, and fraudulent statement to APC personnel.  To wit, Defendant DONALD FILLERS verbally amended the aforementioned, fraudulent 10-day notice with APC to list 2,000 linear feet, 1,200 square feet of duct pipe insulation, transite on the

-20-

cooling towers, and 200 square feet of linoleum (all of which contained RACM), when in truth and fact, as JAMES MATHIS Defendant DONALD FILLERS then and there well knew that there was RACM in the amounts of 6126 linear feet of pipe insulation, 348 EA of pipe fittings, 4,293 square feet of equipment insulation, 3,570 square feet of transite, 1,600 square feet of floor tile / mastic, and 2,440 square feet of oven insulation present at the Standard Coosa facility.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 10
### False Statements
(As Against David Wood)

50.    Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

51.    On January 13, 2009, in the Eastern District of Tennessee, in a matter within the jurisdiction of an agency of the Executive Branch of the United States Government, Defendant DAVID WOOD, did knowingly and willfully make a materially false and fictitious statement to a Special Agent of the United States Environmental Protection Agency, to wit, Defendant DAVID WOOD stated that:

a.    To facilitate their abatement estimate, he gave ADC personnel a complete tour of the Standard Coosa facility and pointed out all asbestos containing materials on the interior and exterior of the Standard Coosa Plant in its entirety;

b.    The initial buildings salvaged and demolished in August and September of 2004 did not contain any asbestos; and

-21-

        c.        He did not accompany Battlefield personnel around the Standard Coosa facility when they were formulating their estimate of the amount of RACM present in the Standard Coosa facility.

When in truth and fact, as DAVID WOOD then and there well knew that:

        a.        He gave ADC personnel only a limited tour of one small portion of the Standard Coosa site;

        b.        The initial buildings salvaged and demolished in August and September 2004 did contain RACM as specified in the Alternative Actions, Inc. survey; and

        c.        He did accompany Battlefield personnel around the site when they were formulating their estimate for the removal of all RACM at the Standard Coosa facility.

All in violation of Title 18, United States Code, section 1001(a)(2).

## COUNT 11
### Obstruction of Justice: Incomplete Survey
(As Against WSP and Donald Fillers)

52.      Paragraphs a through o of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

53.      In or around September 2005, the exact dates being unknown to the Grand Jury, in the Eastern District of Tennessee Defendants DONALD FILLERS and WSP knowingly altered, destroyed, mutilated, concealed, covered up, falsified and submitted a record, document, or tangible object with the intention of impeding, obstructing, and influencing the investigation and proper administration of matters within the jurisdiction of a federal agency.  To wit, Defendants WSP and DONALD FILLERS provided Air Pollution Control with an incomplete

version of the 2003 Alternative Actions, Inc. survey – from which DONALD FILLERS had removed several pages listing significant quantities of RACM with the intention of impeding EPA's and Air Pollution Control's proper administration of the NESHAPs work practice standards and the proper clean-up of the Standard Coosa site.

All in violation of Title 18, United States Code, Sections 1519 and 2.


TRUE BILL:   **/s/Grand Jury Foreperson**
   Grand Jury Foreperson


JOHN C. CRUDEN
Acting Assistant Attorney General
United States Department of Justice

JAMES R. DEDRICK
United States Attorney
Eastern District of Tennessee



By:   **/s/Todd W. Gleason**
   Todd W. Gleason
   U.S. Department of Justice
   Environment & Natural Resources Division
   Environmental Crimes Section


By:   **/s/Matthew T. Morris**
   Matthew T. Morris
   Assistant United States Attorney
   Eastern District of Tennessee