UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:09-CR-144 |
| v. ) | |
| ) | Collier/Carter |
| DONALD FILLERS, *et al.* ) | |

## **M E M O R A N D U M**

Before the Court are motions for judgment of acquittal pursuant to Fed. R. Crim. P. 29 made orally by Defendants Donald Fillers, David Wood, James Mathis, and Watkins Street Project, LLC (collectively "Defendants") at the close of the government's proof. The government orally opposed the motions. For the reasons discussed below, the Court will **DENY** Defendants' motions.

## I. BACKGROUND

Defendants were all charged with conspiracy to defraud the United States and violate the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, as well as with various violations of the CAA's asbestos work-practice standards. Defendants Fillers and Wood were additionally charged with making false statements, and Defendants Fillers and the Watkins Street Project were charged with obstruction of justice (Court File No. 1). The government called a number of witnesses over the course of a three-week trial, and at the close the government's proof, Defendants filed the motion presently before the Court. The Court reserved ruling at that time. On January 30, 2012, the jury returned a verdict of guilty on all counts against all Defendants, with one exception[1] (Court File Nos.

---

[1] The jury found Defendant James Mathis not guilty on Count Four of the Indictment, which charged him with failing to have a trained individual present at the Standard Coosa Thatcher ("SCT") site.

385-88).

Having discussed this case on a number of occasions in previous opinions,[2] the Court will not provide a separate recitation of the facts. Rather, the Court will discuss below facts relevant to each of the arguments put forth by Defendants. The reader can, however, refer to these other opinions.

## II.     STANDARD OF REVIEW

Under the Federal Rules of Criminal Procedure, the defendant may move for judgment of acquittal within seven days of the jury's discharge. Fed. R. Crim. P. 29(a). Such a motion should be granted if "the evidence is insufficient to sustain a conviction." *Id*. In reviewing a challenge to the sufficiency of the evidence, the Court determines, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Court gives the prosecution "the benefit of all reasonable inferences from the testimony." *United States v. Oufnac*, 2011 WL 6005200, at * 3 (6th Cir. Dec. 2, 2011) (quoting *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007)). In addition to construing all reasonable inferences to the benefit of the prosecution, the Court must also make all "credibility choices in support of the verdict." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citation omitted).

When deciding a motion under Rule 29 of the Federal Rules of Criminal Proceduure, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment

---

[2] *See, e.g.*, Court File Nos. 219, 243, 310, & 376.

for that of the jury." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009)). A sufficiency of the evidence challenge under Fed. R. Crim. P. 29 "'is a very heavy burden' for the convicted defendant to meet." *United States v. Kernell*, – F.3d —, 2012 WL 255765, at * 8 (6th Cir. Jan. 30, 2012) (quoting *United States v. Jones*, 641 F.3d 706, 710 (6th Cir.2011)).

If, as here, a court reserves ruling on a motion for judgment of acquittal, the court may decide the motion after the jury returns a verdict of guilty, on the basis of the evidence *at the time the ruling was reserved*. Fed. R. Crim. P. 29(b); *United States v. Wagner*, 382 F.3d 598, 611, n.2 (6th Cir. 2004).

**III. DISCUSSION**

Defendants argue the evidence put forward by the government was insufficient to sustain convictions on all counts in the Indictment. Although these arguments take slightly different forms for each Defendant, two overarching themes appear throughout. First, Defendants base a number of their arguments on the perceived lack of credibility of certain witnesses, focusing in particular on Halbert Warden of ADC Systems, Inc, and on Kathy Jones and John Schultz, both employees of the Chattanooga-Hamilton County Air Pollution Control Bureau ("APCB"). Second, Defendants contend the evidence does not adequately prove they had the required level of knowledge to be found guilty of the conspiracy to violate the CAA or to commit the alleged individual violations of the CAA asbestos work-practice standards. The government asserts the evidence is sufficient for any rational juror to find all Defendants guilty beyond a reasonable doubt on all counts. The Court first lays out the elements involved in each of the charged offenses, before discussing the sufficiency

3

of the evidence, at the time the Court reserved ruling, as to each Defendant on each count. Ultimately, the Court concludes the government presented sufficient evidence to sustain a conviction on all counts for which Defendants were convicted.[3]

### A. Elements of the Offenses

#### 1. Conspiracy (Count One)

Count One charged all Defendants with two conspiracies. First, Count One charges each defendant with conspiring to defraud the United States in violation of 18 U.SC. § 371. To find each defendant guilty of this conspiracy, the government had to prove each of the following elements beyond a reasonable doubt:

(1) The Standard Coosa Thatcher ("SCT") facility contained a jurisdictional amount of regulated asbestos containing material or "RACM" (at least 260 linear feet on pipes or 160 square feet on other facility components or 35 cubic feet);
(2) Two or more persons knowingly conspired, or agreed, to defraud the United States, or one of its agencies or departments in regard to asbestos abatement at the SCT facility by dishonest means.
(3) Defendant knowingly and voluntarily joined the conspiracy; and
(4) One or more members of the conspiracy knowingly did one or more of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

*See Fisher*, 648 F.3d at 447. Under this charged conspiracy, the government need not prove Defendants committed a substantive offense. *United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997). On the second element, defraud is construed more broadly than merely cheating the government out of property or money. *United States v. Minarik*, 875 F.2d 1186, 1190 (6th Cir. 1989)

---

[3] Because the jury acquitted Defendant James Mathis on Count Four, the Court does not consider this Count in the analysis below.

Second, Count One also charged all Defendants with conspiracy to violate the CAA. To find each defendant guilty of this conspiracy, the government had to prove each of the following elements beyond a reasonable doubt:

(1) The SCT facility contained a jurisdictional amount of regulated asbestos containing material or "RACM" (at least 260 linear feet on pipes or 160 square feet of other facility components or 35 cubic feet);
(2) Defendant conspired or agreed with at least one other person to violate the Clean Air Act;
(3) Defendant knowingly joined the conspiracy; and
(4) A member of the conspiracy knowingly did one of the overt acts described in the Indictment for the purpose of advancing or helping the conspiracy.

*See* 18 U.S.C. § 371. Although the government is not required to prove Defendants knew their acts or omissions violated the CAA, it must prove Defendants knew there was asbestos-containing material on pipes or other facility components at the time the demolition was being performed. *United States v. Buckley* (6th Cir. 1991), 934 F.2d 84, 88.[4] Knowledge of the presence of asbestos-containing materials can also be established by showing a Defendant was willfully blind to the presence of asbestos. *Id.* "Willful blindness" exists where a defendant subjectively believed there to be a high probability that a fact existed and took deliberate actions to avoid learning of that fact. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2070 (2010).

### 2. Violations of Clean Air Act Asbestos Work Practice Standards (Counts Two - Seven)

Counts 2-7 charge violations of the CAA's asbestos work-practice standards, including the National Emissions Standards for Hazardous Air Pollutants ("NESHAPs."). In order to find a

---

[4] The government is not required to prove the defendant intended to violate, or was aware he was violating, the CAA. *Buckley*, 934 F.2d at 88.

5

defendant guilty of violating the NESHAP requirements, the government must prove beyond a reasonable doubt each of the following elements:

(1) Defendant was an owner or operator of a demolition or renovation activity involving at least 260 linear feet of friable asbestos material on pipes, or 160 square feet of friable asbestos on other facility components or one cubic meter of friable asbestos on any facility components where the amounts could not be previously measured;
(2) Defendant knew the renovation or demolition involved asbestos; and
(3) Defendant knowingly performed, or knowingly caused another person to perform asbestos abatement activities that did not comply with the applicable work practice standard.

40 C.F.R. § 61.145(b), 61.145(c)(8), 61.145(c)(3), 61.145(c)(6); 61.150(a)(1)(iv), 61.150(b); 61.150(d)(1)-(5). The same knowledge requirement applies to these alleged substantive violations of the CAA as applies to the conspiracy to violate the CAA. The Court will address the specific work practice standards when considering the sufficiency of the evidence arguments below.

### 3. False Statement (Counts Nine & Ten)

Counts 9 and 10 charge Defendants Fillers and Wood with making false statements. To find these Defendants guilty of this offense, the government must prove beyond a reasonable doubt the following elements:

(1) That Defendant made the statements alleged in the Count of the Indictment;
(2) That at least one of these statement was false, fictitious, or fraudulent;
(3) That this statement was material;
(4) That Defendant acted knowingly and willfully; and
(5) That this statement pertained to a matter within the jurisdiction of the executive branch of the United States.

18 U.S.C. § 1001. Where, as with Defendant Wood here, the government alleges more than one false statement, the jury need not decide unanimously which of the alleged statements was false, so long as they unanimously agree Defendant Wood knowingly made a false statement. *See United States v. Schmeltz*, – F.3d —, 2011 WL 6351623, at * 3 (6th Cir. Dec. 20, 2011).

### 4. Obstruction of Justice (Count Eleven)

6

Count 11 charges Defendants Fillers and the Watkins Street Project, LLC with obstructing justice. To find Defendants guilty of this Count, the government must prove the following elements beyond a reasonable doubt:

(1) Defendant knowingly altered, destroyed or concealed any record or document;
(2) Defendant acted with the intent to impede, obstruct, or influence the investigation or proper administration of a matter or in contemplation of or relation to any such matter; and
(3) The matter was within the jurisdiction of the Environmental Protection Agency ("EPA") and the Chattanooga-Hamilton County Air Pollution Control Bureau, which the defendant either knew of or contemplated.

*See* 18 U.S.C. § 1519. A defendant cannot escape criminal liability under this statute just because the investigation has not commenced. *Kernell*, 2012 WL 255765, at * 5 (discussing *United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011)). Moreover, while the government must prove Defendant intended to impede or interfere with an investigation, it does not need to prove the defendant succeeded in obstructing an investigation or even believed he was likely to succeed. *Yielding*, 657 F.3d at 712.

### B. Sufficiency of the Evidence

The two central arguments relied on by Defendants–that witnesses had been contradictory and discredited and that Defendants themselves did not have the requisite level of knowledge–cannot overcome the "heavy burden" they must carry to secure a judgment of acquittal under Fed. R. Crim. P. 29. Although the Court will address the arguments more specifically below, the reasons Defendants' arguments fall short can be concisely stated in general terms. First, in relying on extended discussions of the perceived lack of credibility of various government witnesses, Defendants mistakenly ask the Court to reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its own judgment for that of the jury. This, however, the Court cannot do.

7

*Fisher*, 648 F.3d at 450. It is the prerogative of the jury–not the Court–to determine which witnesses to believe and how much of a witness's testimony to credit or discredit. *See id.* Moreover, in evaluating the evidence, the Court must give the government the benefit of credibility choices and assume its witnesses are truthful. *See Campbell*, 549 F.3d at 374.

Second, in claiming the evidence did not establish they knew the SCT facility contained asbestos (or that Defendants believed the asbestos had been properly abated), Defendants neglect to address the considerable evidence of willful blindness. Given the procedural posture of this motion, the Court need not conclude Defendants were in fact willfully blind as to the presence of asbestos. Instead, the Court must only decide whether any rational juror could find, beyond a reasonable doubt, Defendants knew–which includes being willfully blind–the SCT facility contained asbestos. The Court concludes a rational juror could indeed make this finding.

### 1. Conspiracy (Count One)

On the conspiracy charges, Defendants offered various arguments.[5] First, Defendants Fillers and Mathis appeared to argue there was no evidence of an agreement between the parties. There was ample evidence that all Defendants acted in concert to achieve a common goal, the demolition of the SCT site, and this is sufficient to infer an agreement. Moreover, the evidence of the contract between Watkins Street Project, LLC, of which Defendant Fillers was the primary manager, and Mathis Companies, Inc., of which James Mathis was the primary manager, provides sufficient

---

[5] The Court attempts in this memorandum to distinguish which arguments were made by which Defendants. During the hearing at which Defendants made their Rule 29 motions, however, they repeatedly noted they were "adopting" arguments made by other Defendants. Thus, the Court in some instances refer to arguments made by "Defendants" where the Court understands an argument to have been adopted by all four Defendants, even if initially only made by one of them.

8

evidence to show an agreement between three of the four parties. Moreover, it is undisputed that Defendant Wood was an employee of Watkins Street Project, and there was testimony from a number of witnesses of his involvement with the SCT site. In particular, a number of witnesses, including Lisa Blackburn, Halbert Warden, and Dayton Baggett, observed Wood involved in work on the site. Other testimony suggested Wood was involved in the bidding process as well.

Second, Defendants argued they did not have the knowledge of asbestos on the site to sustain a conviction of the conspiracy to violate the CAA. Each Defendant frames this argument in a different way. Fillers claims the evidence fails to show when the asbestos arrived on the site, and that in any case the evidence shows he believed any asbestos that was in the site had been properly (and presumably completely) abated by ADC Systems, Inc. Wood contends he simply never had any idea that the materials he was removing contained asbestos. He further takes issues with three of the overt acts alleged in the Indictment. Finally, Mathis claims he believed abatement was properly completed at the site, and he argues no inference of his knowledge should be drawn from testimony of his former employees regarding the presence of asbestos.

Largely for the reasons already discussed, these arguments are unavailing. For Fillers, there was substantial evidence to suggest he knew asbestos was on the site. Moreover, there was considerable evidence indicating he should have known the entire site had not been properly abated. *Compare* Gov't Ex. 2 (survey conducted by Alternative Actions, Inc. ("AAI") of entire site) *with* Gov't Ex. 7 (permit submitted to APCB giving smaller numbers for size of the site than in the AAI survey).[6] Halbert Warden testified he notified Fillers, Wood, and Mathis about additional asbestos

---

[6] Fillers's knowledge of asbestos at the site can also be attributed to the Watkins Street Project, LLC.

on-site that had not been removed. Lisa Blackburn testified she handled asbestos at Wood's direction. Finally, a rational juror could surely infer from the knowledge of Mathis's employees about the presence of asbestos on the site that Mathis himself also knew. Construing all evidence at this point in the light most favorable to the government, the Court concludes a rational juror could find all Defendants knew about–which includes the possibility of willful blindness regarding–the presence of asbestos at the SCT site.

Third, Defendant Mathis argues there is no evidence to link him to the alleged conspiracy to defraud the United States. He claims Kathy Jones at APCB provided confusing testimony, but ultimately stated she received the fraudulent ten-day notice from Fillers, and not from Mathis. The Court agrees Jones's testimony proved confusing, and at times even contradictory. It is not, however, the Court's position to assess her credibility. While equivocal, her testimony did implicate Mathis in the submission of the fraudulent ten-day notice, which forms the basis of the conspiracy to defraud the United States against Mathis. Mathis's argument, while stronger than other Defendants on this point, cannot overcome the heavy burden imposed defendants on a Rule 29 motion. Accordingly, the Court concludes sufficient evidence exists to sustain Mathis's conviction on this Count.[7]

Because the government's proof, giving that proof the benefit of all reasonable inferences, provided sufficient evidence for a reasonable juror to conclude all Defendants had conspired to defraud the United States and violate the CAA, the Court denies Defendants' motions with respect

---

[7] Even if the Court were to find insufficient evidence to support his conviction for conspiracy to defraud the United States, the Court notes the jury also convicted Mathis–as it did all Defendants–of conspiracy to violate the CAA. Thus, a ruling in Mathis's favor on the conspiracy to defraud the United States would not obviate his conviction on Count One.

to Count One.

### 2.   Violations of Clean Air Act Asbestos Work Practice Standards (Counts Two - Seven)

For the Counts alleging substantive CAA violations, Defendants rely largely on arguments centered on the credibility of witness testimony and their own alleged lack of knowledge regarding the presence of asbestos at the SCT site. Because the Court has already discussed why these arguments cannot succeed, the Court will here focus on the more specific arguments Defendant Fillers and Defendant Wood make.[7]

Defendant Fillers leans heavily on the Wardens and ADC System, Inc. to absolve himself of any responsibility for alleged violations of the CAA work-practice standards. On Count Three, which alleges commencing demolition prior to completion of abatement, Fillers contends he believed the Wardens had in fact completed abatement. For Count Four, which charges failure to have a trained individual present, Fillers asserts the Wardens were trained in asbestos abatement. Similarly on Counts Five, Six, and Seven, each of which charges mishandling asbestos,[8] Fillers claims he believed the Wardens were following the proper procedures, and he should not be held responsible for their mistakes.

These arguments, however, ignore testimony from a number of witnesses explaining how work was carried on in other parts of the facility by workers unattached to the Wardens and ADC Systems, Inc. On Count Three, the discrepancy between the AAI survey and the permit sought from

---

[7] In reviewing the transcript of Defendants' Rule 29 motion, the Court cannot discern independent arguments on Counts 2-7 made by James Mathis or Watkins Street Project.

[8] Count Five charges failure to wet regulated asbestos-containing materials ("RACM"). Count Six charges failure to lower RACM properly. Count Seven charges failure to containerize and properly dispose of RACM.

11

APCB again provides evidence Fillers was aware of unabated asbestos at the site. On Count Four, Halbert Warden himself testified workers were at the SCT site removing materials when he arrived and after he left. Although Warden himself was a trained individual, he was not present throughout the demolition as required by law. Antonio Lumpkin, one of the Mathis's employees, similarly testified that removal of asbestos-containing materials happened when no trained individuals were present. Similarly, on Counts Five, Six, and Seven, testimony from Warden, Dayton Baggett, Lisa Blackburn, Wilson Meadows, Bettye Spratling, and others indicated workers at the site were not wetting, properly lowering, and containerizing the RACM as the law required they did.

Defendant Wood contends the evidence was insufficient to convict him on Count Four because he had no responsibility to ensure a trained individual was present while the demolition activities occurred. He argues such a responsibility–and therefore criminal liability–rests solely on his employer, whether that is construed as Fillers or the Watkins Street Project. Wood's argument founders, however, on the definition of owner/operator under the CAA's regulatory provisions. As the jury was instructed, an owner or operator of a demolition activity includes "any person who owns, leases, operates, controls, or *supervises* the facility being demolished." 40 C.F.R. §§ 61.141 (emphasis added). There was testimony from a number of witnesses, perhaps most prominently Lisa Blackburn, that Wood remained on certain occasions the only on-site supervisor of the demolition activities occurring at the SCT site. And there is no dispute that Wood is not a "trained individual" under asbestos regulatory law.

Accordingly, the Court concludes a rational juror could find Defendants guilty beyond a reasonable doubt of the violations of the CAA's asbestos work-practice standards alleged in Counts Two through Seven of the Indictment.

12

### 3. False Statement (Counts Nine & Ten)

Count Nine charged Defendant Fillers with making a false statement when he verbally amended the numbers indicating the size of the area to be abated in a telephone conversation he had with Kathy Jones of the APCB. Count Ten similarly charges Defendant Wood in connection with three statements he allegedly made to EPA Special Agent Jeffrey Crane on January 13, 2009. The Indictment alleged Wood falsely stated 1) he gave ADC personnel a complete tour of the SCT site; 2) the initial buildings salvaged and demolished in August and September 2004 contained no asbestos; and 3) he had not accompanied personnel from Battlefield Abatement ("Battlefield") around the SCT site when Battlefield was formulating its estimate of RACM in the facility. Both Defendants challenge the sufficiency of the evidence on the false statement charges, but in different ways.

Defendant Fillers makes two arguments. First, he claims there is no evidence he knew the contents of the AAI survey, and thus when he verbally amended the survey over the phone, he had no reason to believe the numbers he gave Jones were incorrect. Second, Fillers contends that because he increased the amount of asbestos to be abated, he cannot have made a false statement. Neither of these arguments is persuasive. Although there is no direct evidence Fillers knew the contents of the AAI survey, there is considerable circumstantial evidence, including in the testimony of Michael Gray, the head of AAI, and others. Fillers's position as the primary manager of Watkins Street Project, formed specifically to demolish and salvage materials from the SCT facility, is also circumstantial evidence he would have known of the contents of the survey. Second, the mere fact that Fillers increased the amount of asbestos to be abated is irrelevant, and certainly not a basis for

13

arguing the statement was not false.[9] Indeed, a comparison of the APCB permit after its amendment by Fillers and the AAI survey still indicates a wide gulf in the amount of asbestos to be abated. A rational juror could accordingly find sufficient evidence to convict Fillers on this Count beyond a reasonable doubt.

Defendant Wood argues there was not any evidence that he had made the statements alleged or, alternatively, the evidence showed what he is alleged to have said was not in fact false. The jury needed only find one of the statement to be materially false, *Schmeltz*, 2011 WL 6351623, at * 3, and was not required to indicate on the verdict form for which statement or statements it convicted Wood. Special Agent Crane testified at trial, and the jury could have concluded beyond a reasonable doubt from his testimony Wood made the statements attributed to him in the Indictment. Moreover, there is also evidence that each of the statements made was false. First, Halbert Warden[10] testified Wood prevented him from accessing any area at the SCT site other than the carved area which ADC had been hired to abate. The jury could conclude from this testimony that Wood in fact never, as he told Crane, provided a complete tour of the site to ADC. Second, evidence from a number of witnesses, including Ms. Blackburn, suggests Wood was in fact aware that buildings demolished in August and September 2004 contained asbestos. Finally, a jury could infer from the testimony of Bryan Kyle from Battlefield, although not identifying Wood by name or in the courtroom, that Wood had accompanied Kyle when Battlefield performed its search of the site in order to formulate

---

[9] Defendant Fillers offers the Court no case law or other authority in support of this proposition.

[10] To the extent Wood here relies on Warden's perceived lack of credibility, the Court again reiterates such an assessment is properly–and solely–in the hands of the jury. *Fisher*, 648 F.3d at 450

14

an estimate of the amount of asbestos in the SCT facility.

Accordingly, the Court concludes a rational juror could find sufficient evidence to convict Defendants Fillers and Wood of making false statements as alleged in Counts Nine and Ten of the Indictment beyond a reasonable doubt.

### 4. Obstruction of Justice (Count Eleven)

The final Count–Count Eleven–in the Indictment charged Defendants Fillers and Watkins Street Project, LLC with obstructing justice by providing APCB with an incomplete version of the AAI survey. The Indictment alleges Fillers removed pages listing significant quantities of RACM with the intention of impeding EPA's and APCB's proper administration of the asbestos work-practice standards. Defendants Fillers and Watkins Street Project vehemently contend the evidence in the record cannot support a conviction on this ground.[11] Both Defendants argue the evidence failed to show Fillers gave John Schultz of the APCB an incomplete survey, and further failed to show that, even if he had, Fillers did so in order to impede an investigation. Watkins Street Project claims the evidence only shows Schultz was in Fillers's office at the time Fillers and his wife were looking for the survey, and that Schultz was ultimately unsure whether it was Fillers or his wife that gave him the survey. Moreover, both Defendants assert, Schultz's testimony was vague, incomplete, and at times contradictory.

Although the Court agrees with Defendant that the evidence on this Count is lean, the Court ultimately concludes Defendants' arguments do not carry the heavy burden to show no rational juror could conclude beyond a reasonable doubt that Fillers and Watkins Street Project, LLC unlawfully

---

[11] Counsel for Watkins Street Project, LLC described Count Eleven as an "extremely weak count that should never have been brought."

15

obstructed justice. Defendants' arguments fail largely because they ask the Court to stand in for the jury and assess the credibility of Schultz. Schultz's testimony was indeed equivocal and at times contradictory. He appeared at one time to testify Fillers had submitted the survey to him, and then he appeared to suggest it may have been Fillers's wife. On direct examination he testified the survey was altered, but when cross-examined, Schultz appeared, if not to recant this testimony, at least to acknowledge that he was no longer entirely sure. In brief, Schultz was not one of the government's more convincing witnesses.

That Schultz was not a better witness for the government does not, however, render the evidence insufficient for a conviction on Count Eleven on a Rule 29 motion. To sustain a conviction of Fillers and Watkins Street Project, LLC, for obstruction of justice, the government needed to prove (1) that Fillers knowingly deleted or altered the AAI survey information (2) with the intent to impede, obstruct or influence an investigation within the jurisdiction of EPA or APCB that (3) he contemplated at the time of the deletion or alteration. *See Kernell*, 2012 WL 255765, at *9. On this third element, the government need not prove the investigation had begun or that Fillers believed he was likely to succeed in an effort to impede or obstruct an investigation. *Id.* at 5; *Yielding*, 657 F.3d at 712. There is no dispute here AAI received an altered survey. Although the government did not offer direct evidence Fillers knowingly altered that survey, a rational juror could find that fact through circumstantial evidence that Fillers and the Watkins Street Project, LLC had the survey conducted and maintained possession of it.[12]

Moreover, a rational juror could further find, based on Schultz's testimony as well as other

---

[12] Defendants made much at trial of the fact that Gary, not Don, Fillers was listed as the addressee of AAI's letter and survey. The jury could nonetheless have concluded Don Fillers received, read, maintained possession–and altered–the survey.

16

evidence indicating Fillers was resistant to sharing the survey with APCB and Eva Pate of Pates Construction and Demolition, that Fillers intended to impede a future investigation. *See Kernell*, 2012 WL 255765 at * 5 ("The statute . . . does not allow a defendant to escape liability for [altering] documents with intent to obstruct a foreseeable investigation of a matter within the jurisdiction of a federal agency just because the investigation has not yet commenced.") (quoting *Yielding*, 657 F.3d at 711). Thus, the jury could conclude even if no investigation had begun at the time Fillers submitted the altered the survey to APCB, he nonetheless intended to impede any future investigation. Finally, a rational juror could also infer, perhaps from the fact Fillers verbally amended the AAI survey in his conversation with Kathy Jones at APCB, that he contemplated a possible investigation by APCB or EPA at that time. Thus, a rational juror could find all the elements of an obstruction of justice violation against Fillers and Watkins Street Project, LLC beyond a reasonable doubt.

The Court notes the evidence on this Count is slim, at best. But slim evidence, as long as it could convince any rational juror beyond a reasonable doubt, is all the government must put forward to defeat a defendant's motion under Rule 29 of the Federal Rules of Criminal Procedure. The Court concludes the government has met this burden, and that Defendants have not met their heavy burden of showing no rational juror, when construing all reasonable inferences in favor of the government, could find them guilty beyond a reasonable doubt of obstructing justice as alleged in Count Eleven.

## IV. CONCLUSION

For the reasons discussed above, the Court will **DENY** Defendants' motion for a judgment

17

Case 1:09-cr-00144-CLC-WBC   Document 402   Filed 03/01/12   Page 17 of 18   PageID #: 2913

of acquittal pursuant to Fed. R. Crim. P. 29.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

18